238 N.J. Super. 445 (1990)
570 A.2d 20
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, AND CROSS-APPELLANT,
v.
DAVID G. TODD, DEFENDANT-APPELLANT, AND CROSS-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted November 29, 1989.
Decided February 6, 1990.
*447 Before Judges DREIER, SCALERA and D'ANNUNZIO.
Bowers, Murphy, O'Brien and Lieberman, for appellant (Steven B. Lieberman, of counsel, Steven B. Lieberman and Randall W. Westreich, on the brief).
Peter N. Perretti, Jr., Attorney General, attorney for respondent (John Kennedy, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by SCALERA, J.A.D.
Pursuant to a plea agreement, defendant David G. Todd pleaded guilty to two counts of distribution of drugs, two *448 counts of distribution of drugs within 1000 feet of a school, two counts of possession of drugs with intent to distribute and two counts of possession of drugs, in violation of N.J.S.A. 2C:35-5a(1), N.J.S.A. 2C:35-7, N.J.S.A. 2C:35-5a(1) and N.J.S.A. 2C:35-10a(1) respectively. The State recommended an aggregate minimum sentence of five years of imprisonment with two years of parole ineligibility.
The trial judge merged the offenses of possession and possession with intent to distribute into the distribution charges and imposed concurrent sentences of five years imprisonment with a two year parole disqualifier on the remaining four convictions. He also imposed mandatory penalties of $1,000 on each count pursuant to N.J.S.A. 2C:35-15, but imposed the mandatory laboratory fee of $50 pursuant to N.J.S.A. 2C:35-20a only on two of the convictions.
The defendant appeals, raising various constitutional challenges to certain sections of the Comprehensive Drug Reform Act of 1986, N.J.S.A. 2C:35-1 et seq., and alleging that:
Point I: N.J.S.A. 2C:35-14 is unconstitutional in that it violates the separation of powers clause of the State constitution by removing the power to place a defendant in a drug rehabilitation program unless the prosecutor consents.
Point II: N.J.S.A. 2C:35-7 and 2C:35-12 penalizes the exercise of constitutional rights and operate to coerce guilty pleas and are therefore unenforceable.
Point III: N.J.S.A. 2C:35-12 violates the separation of powers clause of the State constitution by removing sentencing power from the judiciary and delegating to the prosecutor the authority to fix sentences.
Point IV: N.J.S.A. 2C:35-7 and 2C:35-14 violate the State and federal constitutional provisions against the imposition of cruel and unusual punishments.
Point V: N.J.S.A. 2C:35-7 violates the State and federal constitutional prohibition against double jeopardy.
Point VI: N.J.S.A. 2C:35-7 violates the equal protection clause of the United States Constitution and New Jersey Constitution.
The State has cross-appealed, contending that the trial judge erred in merging the convictions for possession with intent to distribute drugs with the convictions for distribution thereof and in imposing a laboratory fee penalty on only two of the convictions.
*449 There is no dispute that defendant was involved in the sale of cocaine to an undercover police officer on the grounds of the Somerset County Vocational Technical High School on February 23 and 26, 1988.
The arguments raised by defendant in Points II, IV, V and VI have been considered and rejected by this court and the Law Division. See State v. Blow, 237 N.J. Super. 184, 567 A.2d 253 (App.Div. 1989); State v. Ogar, 229 N.J. Super. 459, 551 A.2d 1037 (App.Div. 1989); State v. Brown, 227 N.J. Super. 429, 437-438, 547 A.2d 743 (Law Div. 1988); State v. Morales, 224 N.J. Super. 72, 81-83, 539 A.2d 769 (Law Div. 1987). We see no reason to address them any further here.
The two remaining issues warrant a fuller discussion. Defendant pleaded guilty to two counts charging violations of N.J.S.A. 2C:35-7, which, insofar as is pertinent here, provides:
Any person who violates subsection a. of N.J.S. 2C:35-5 by distributing, dispensing or possessing with intent to distribute a controlled dangerous substance or controlled substance analog while on any school property used for school purposes which is owned by, or leased to any elementary or secondary school or school board, or within 1,000 feet of such school property or school bus, or while on any school bus, is guilty of a crime of the third degree and shall, except as provided in N.J.S. 2C:35-12, be sentenced by the court to a term of imprisonment.... [N.J.S.A. 2C:35-7, emphasis added.]
Thus, the exception to a mandatory jail sentence is set forth in N.J.S.A. 2C:35-12 states:
Whenever an offense defined in this chapter specifies a mandatory sentence of imprisonment which includes a minimum term during which the defendant shall be ineligible for parole, or a mandatory extended term which includes a period of parole ineligibility, the court upon conviction shall impose the mandatory sentence unless the defendant has pleaded guilty pursuant to a negotiated agreement or, in cases resulting in trial, the defendant and the prosecution have entered into a post-conviction agreement, which provides for a lesser sentence or period of parole ineligibility. The negotiated plea or post-conviction agreement, may provide for a specified term of imprisonment within the range of ordinary or extended sentences authorized by law, a specified period of parole ineligibility, a specified fine, or other disposition. In that event, the court at sentencing shall not impose a lesser term of imprisonment, period of parole ineligibility or fine than that expressly provided for under the terms of the plea or post-conviction agreement. [N.J.S.A. 2C:35-12, emphasis added.]
*450 Defendant argues that N.J.S.A. 2C:35-12 impermissibly deprives the court of the power to impose a lesser sentence than that expressly negotiated between a defendant and the prosecutor in the plea agreement or post-conviction agreement. In other words, the statute violates the separation of powers provision of the State Constitution by removing the sentencing authority from the judiciary and delegating such authority to the prosecutor. See N.J. Const. (1947), Art. III, par. 1. Defendant specifically argues that when N.J.S.A. 2C:35-7 and N.J.S.A. 2C:35-12 are read and applied together, "[t]he judiciary has no discretion regarding sentencing, but the prosecutor can decide if the accused should be incarcerated, the length of the term, whether parole ineligibility will be imposed, and even the amount of the fine."
As a corollary, defendant similarly attacks the constitutionality of N.J.S.A. 2C:35-14 which provides:
a. Notwithstanding the presumption of incarceration pursuant to the provisions of subsection d. of N.J.S. 2C:44-1, and except as provided in subsection b. of this section, whenever a drug dependent person is convicted of an offense under N.J.S. 2C:35-5, N.J.S. 2C:35-6, section 1 of P.L. 1987, c. 101 (C. 2C:35-7), N.J.S. 2C:35-10, N.J.S. 2C:35-11, or N.J.S. 2C:35-13, other than a crime of the first degree, the court, upon notice to the prosecutor, may, on motion of the defendant and where the court finds that no danger to the community will result and that the placement will serve to benefit the defendant by serving to correct his or her dependency on controlled substances, place the defendant on probation which shall be for a term of five years. As a condition of that probation, the court shall order the defendant to enter a drug rehabilitation program, subject to such other reasonable terms and conditions as may be required by the court and by law, pursuant to N.J.S. 2C:45-1, and which shall include periodic urine testing for drug usage throughout the period of probation.
b. Except upon the joint application of the defendant and the prosecuting attorney, no person convicted of an offense under N.J.S. 2C:35-6 or section 1 of P.L. 1987, c. 101 (C. 2C:35-7), or who has been previously convicted of an offense under subsection a. of N.J.S. 2C:35-5 or a similar offense under any other law of this State, any other state or the United States, shall be eligible for sentence in accordance with this section. [N.J.S.A. 2C:35-14a and 14b, emphasis added.]
Under N.J.S.A. 2C:35-14a the court may sentence a defendant convicted of certain drug offenses to a rehabilitation program if the defendant moves for such a sentence and if the *451 court first makes some cautionary findings and provides notification of the prospective disposition to the prosecutor.[1] However, if a defendant has previously been convicted for violation of N.J.S.A. 2C:35-7 (as defendant Todd has been in the case at bar), then arguably, the court does not have the power to even consider sentencing the defendant to a rehabilitation program unless the prosecutor joins in the defendant's motion.
In State v. Morales, 224 N.J. Super. 72, 539 A.2d 769 (Law Div. 1987), the court tangentially addressed this contention when multiple defendants claimed that they were unconstitutionally penalized by N.J.S.A. 2C:35-12 for exercising the right to go to trial. However, the Morales court rejected that argument, holding that the statute "... does not remove the judiciary's final authority concerning the fairness of the [plea] bargain, [because] the ultimate sentencing prerogatives remain with the court, not the prosecutor." Id. at 86, 539 A.2d 769. While Morales, did not squarely address the separation of powers argument presented here, it correctly indicated that the grant of some sentencing discretion to the prosecutor during plea bargaining is not constitutionally defective so long as the court retains the ultimate authority to accept or reject the plea bargain itself.
In State v. Brown, 227 N.J. Super. 429, 547 A.2d 743 (Law Div. 1988), the defendant directly contended that N.J.S.A. 2C:35-12 violated the separation of powers provision of the State Constitution. Id. at 439-441, 547 A.2d 743. Brown also rejected the defendant's constitutional argument as it applied to pre-conviction plea bargains, noting that the court was not required to impose the sentence negotiated under a plea bargain, and that the statute only prevented the court from imposing a lesser sentence if the prosecutor objected. Id. at 440-441, *452 547 A.2d 743. It reasoned that since the sentencing court could always reject the plea agreement entirely and compel the parties to renegotiate or go to trial, the ultimate sentencing function remained with the court. However, the Brown court explicitly left open the question whether post-conviction sentencing agreements between the prosecutor and a defendant under N.J.S.A. 2C:35-12 unconstitutionally limit the court's sentencing power. Ibid.
Decisions from other jurisdictions have considered the constitutionality of statutes which purport to elevate prosecutorial discretion over judicial discretion in the fixing of criminal sentences. Those which do uphold the prosecutor's discretion subject it to final judicial authority, however. There is significant out-of-state authority which simply invalidates the delegation of such a power as a violation of the separation of powers doctrine.
In People v. Navarro, 7 Cal.3d 248, 102 Cal. Rptr. 137, 497 P.2d 481 (1972), the defendant was convicted both of selling heroin and of assault with a deadly weapon. A California statute  similar to N.J.S.A. 2C:35-14a  permitted the court to sentence the defendant to a drug rehabilitation program. Another statute  similar to N.J.S.A. 2C:35-14b  excluded persons who had been convicted of assault from being placed in such a rehabilitation program, unless the prosecutor agreed to such placement. In Navarro, the prosecutor refused to agree to the court's placement of the defendant in a program.
The Supreme Court of California held that the requirement for the prosecutor's agreement violated the separation of powers clause of the state constitution because it subjected the judicial sentencing authority to the prosecutor's control.[2]Id. 102 Cal. Rptr. at 143-145, 497 P.2d at 487-489.
*453 Such reasoning is also pertinent to a consideration of the constitutionality of N.J.S.A. 2C:35-12 which applies to postconviction agreements. See State v. Brown, 227 N.J. Super. at 441, 547 A.2d 743. The Navarro rationale suggests that such a post-conviction exercise of control over sentencing by the prosecutor is violative of the separation of powers doctrine. 102 Cal. Rptr. at 144-145, 497 P.2d at 488-489.
Similarly, in State v. Olson, 325 N.W.2d 13 (Minn. 1982), the defendant was convicted of an assault that carried a statutory minimum sentence of three years imprisonment. However, under a pertinent Minnesota statute, analogous to N.J.S.A. 2C:35-14b in the present case, there was a "safety valve" that permitted the court to sentence below the mandatory term, if the prosecutor moved for such sentencing. The prosecutor refused to move for more lenient sentencing. Nevertheless, the court sentenced the defendant to lesser than the mandatory term. The Supreme Court of Minnesota affirmed the trial court's sentence and found that the only reasonable interpretation of the disputed statute supported the conclusion that it violated the separation of powers doctrine. Id. at 17-21.
In State v. LeCompte, 406 So.2d 1300 (La. 1981), reh. den., 446 So.2d 314 (La. 1984), defendants were charged with narcotics trafficking. Under a pertinent Louisiana statute, following conviction and mandatory sentencing, the prosecutor could move the court for a reduced or suspended sentence if the defendant had provided substantial assistance to the prosecution. The defendants contended that the disputed statute violated the separation of powers doctrine.
Initially the LeCompte court saw no constitutional impediment but, on rehearing, recognized that "[g]iving the trial judge the final authority to impose a reduced or suspended sentence if the district attorney in his discretion decides to *454 recommend such, is hardly a good argument that the judiciary's power to sentence following conviction is not invaded by the district attorney." Id. 406 So.2d at 1310. Under such circumstances, "... the consequent sentencing (reduced or not, suspended or not) is at least as much the discretionary choice of the district attorney as that of the judge." Id. at 1311. However, the court avoided finding the disputed Louisiana statute unconstitutional by interpreting it to mean that the judiciary also had the power, independent of the prosecutor, to reduce or suspend statutorily-prescribed sentences if the judge found that a defendant had provided substantial assistance to the prosecution. Id. at 1311-1312.
In Brugman v. State, 255 Ga. 407, 339 S.E.2d 244 (1986), the defendants were convicted of trafficking in cocaine. They appealed, arguing that the legislature had unconstitutionally delegated the sentencing power of the judiciary to the prosecutor by enacting a statute permitting a court to impose a less than the statutorily-prescribed mandatory sentence for drug-trafficking only if the prosecutor moved for such a reduced sentence on the basis of the defendant's cooperation with the prosecutor. Brugman, 339 S.E.2d at 250-252.
The Supreme Court of Georgia followed the reasoning of the LeCompte court and implied that, while the disputed statute was violative of the separation of powers doctrine on its face, it could and would be interpreted to give the judiciary the independent power to pass reduced sentences without the consent of the prosecutor. Brugman, 339 S.E.2d at 251-252. "Such a construction of the statute assures that the power to impose sentence within the range prescribed by the legislature ... remains in the judiciary." Id. at 251.
Finally, in State v. Jones, 142 Ariz. 302, 689 P.2d 561 (App. 1984), the defendant was convicted of drunken driving. The Arizona statute mandated a jail sentence for such a conviction, but provided that a court could sentence a defendant to an alternative, non-jail sentence "... if the judge, based on the *455 prosecutor's recommendation, finds that such alternative sentencing will serve the interests of the state...." Id., 689 P.2d at 563. In Jones, the trial court sentenced defendant to an alternative sentence without the prosecutor's recommendation. On appeal, the court agreed with defendant that the disputed statute violated the separation of powers principle because it made alternative sentencing dependent on the prosecutor's recommendation:
While it is within the sole power of the legislature to determine what acts constitute crime and to prescribe punishment for those acts, State v. McClarity, 27 Ariz. App. 571, 557 P.2d 170 (1976) it cannot give the prosecuting attorney the authority, after a conviction, to decide what the punishment shall be. That is a judicial function. A.R.S. § 28-692.01(C) [The disputed statute] was enacted to mitigate the punishment prescribed by § 28-692.01(B) and the decision to mitigate a sentence properly belongs to the judge and not to the prosecutor. [Id., 689 P.2d at 564.]
Accord, State v. Prentiss, 163 Ariz. 81, 786 P.2d 932 (Ariz. 1989).
Other cases have upheld similar statutes. In People v. Eason, 40 N.Y.2d 297, 386 N.Y.S.2d 673, 353 N.E.2d 587 (N.Y. 1976), the defendant was convicted of distributing heroin. A statute provided that a court could sentence a person to a period of probation, if the defendant gave material assistance in the underlying investigation and if the prosecutor so recommended. At sentencing, the defendant insisted that he had cooperated with the prosecutor and that the prosecutor should therefore have recommended him for probation. The sentencing court rejected this contention and instead sentenced defendant to a minimum mandatory period of imprisonment. On appeal, the defendant contended that the sentencing statute violated the doctrine of separation of powers because it unconstitutionally vested the executive branch of government with sentencing discretion properly reserved to the judiciary. The Court of Appeals rejected this argument, stating:
We cannot agree. In Matter of McDonald v. Sobel, 272 App.Div. 455, 72 N.Y.S.2d 4, aff'd., 297 N.Y. 679, 77 N.E.2d 3 an analogous statute was considered. There the District Attorney refused to consent to and recommend acceptance of a plea of guilty to a lesser offense, a prerequisite to acceptance *456 thereof (Code Crim.Pro., § 342-a). Nevertheless, the Trial Judge received the plea to a lesser offense than that set forth in the indictment. Sustaining the requirement and mandate in that section, it was held on appeal that absent submission of the required statement and consent by the District Attorney, the County Court was powerless to accept the plea and impose sentence. Little difference is to be noted between that determination and the case at bar. So long as a statute does not wrest from courts the final discretion to impose sentence, it does not infringe upon the constitutional division of responsibilities. The statute here, and that considered in McDonald, serve only to limit the sentencing options available to the judiciary as do, of course, all statutes prescribing the limits of the penal sanction to be imposed for any given offense (see Penal Law, art. 60). [Id., 386 N.Y.S.2d at 675-676, 353 N.E.2d at 588-589, emphasis added.]
While Eason did not involve a plea or post-conviction agreement, it was based upon a statutory requirement of a prosecutor's post-conviction recommendation before the court could order a less severe sentencing alternative. In that respect, the statute in dispute in Eason resembles N.J.S.A. 2C:35-14b (the drug rehabilitation program statute), and under its rationale our provision would not offend the separation of powers doctrine.
In State v. Benitez, 395 So.2d 514 (Fla. 1981), the defendants were charged with the distribution of cocaine. The Florida statute provided severe mandatory minimum term sentences. However, it also provided an "escape valve" if a defendant cooperated with the prosecutor and if the prosecutor moved for less than the mandatory sentence, based on that cooperation. Rejecting the defendants' constitutional attack, the Supreme Court of Florida stated:
Appellees' [defendants'] second argument premised on the constitutional separation of powers is that subsection (3) [of the disputed statute] usurps the sentencing function from the judiciary and assigns it to the executive branch, since the benefits of subsection (3) are triggered by the initiative of the state attorney. Under the statute, the ultimate decision on sentencing resides with the judge who must rule on the motion for reduction or suspension of sentence. "So long as a statute does not wrest from courts the final discretion to impose sentence, it does not infringe upon the constitutional division of responsibilities." People v. Eason, 40 N.Y.2d 297, 301, 386 N.Y.S.2d 673, 676, 353 N.E.2d 587, 589 (1976) (emphasis in original) (rejecting a separation of powers attack on a similar provision in New York's drug laws). [Id., 395 So.2d at 519.]
*457 In Eldridge v. State, 418 So.2d 203 (Ala.Cr.App. 1982), the defendant was convicted of trafficking in narcotics and tacitly raised a separation of powers argument attacking the charging statute. This contention was rejected:
Appellant also argues that the provisions of the Alabama Code addressing drug trafficking are unconstitutional because the trial judge cannot grant probation or reduce sentence unless the prosecuting attorney so moves the court, § 20-2-81(b). This statute's constitutionality has been established by this court in the recent case of Wheatt v. State, 410 So.2d 479 (Ala.Cr.App. 1982). The Wheatt case relied on the case of State v. Benitez, 395 So.2d 514 (Fla. 1981), which addressed this question relative to a similar Florida drug trafficking statute.
The Benitez case concludes that even when the reduction or suspension of sentence is triggered by the initiative of the State's attorney,
`as long as a statute does not take from the courts the final discretion to impose sentence, it does not infringe upon the constitutional division of responsibilities.' [Id., 418 So.2d at 207.]
The disputed Alabama statute in Eldridge is comparable to N.J.S.A. 2C:35-14b in that both deal with similar statutory grants of prosecutorial discretion. However, see State v. Drewry, 519 So.2d 591, 596-597 (Ala.Cr.App. 1987) where the court subjected such prosecutorial power to judicial review in order to determine if it is abused.
In People v. District Court of Second Judicial Dist., 106 Colo. 89, 101 P.2d 26 (1940), the defendant was found guilty of a crime for which apparently there was a mandatory sentence. However, under a Colorado statute, the sentencing court had the power to suspend any such sentence if the prosecutor agreed that such suspension would be in the interest of justice. The sentencing judge wanted to suspend the sentence but the prosecutor disapproved. The judge suspended the sentence anyway, and the prosecutor appealed.
The Supreme Court of Colorado reversed and held that there was nothing "unreasonable" about the prosecutor's statutorily-derived power to trigger a court's ability to impose a less than mandatory sentence. Id., 101 P.2d at 28-29. Accord, People v. Sanders, 185 Colo. 153, 522 P.2d 735, 736-737 (1974) (where the *458 court cited the continuing validity of the reasoning of the previous citation.)
In U.S. v. Huerta, 878 F.2d 89, 91-93 (2d Cir.1989), cert. den., ___ U.S. ___, 110 S.Ct. 845, 107 L.Ed.2d 839 (1990), a federal court rejected a separation of powers attack on 18 U.S.C.A. § 3553(e), which provides that, "upon motion of the government," a defendant may be eligible for a sentence below the statutory minimum for providing substantial assistance to the government. The Huerta court pointed out that even though prosecutor's motion would affect the defendant's eligibility for a sentence below the prescribed range, the power to actually decide the motion and to pronounce sentence remained with the court, thus obviating any constitutional infirmity under the separation of powers doctrine. Id., 878 F.2d at 91-93. Other federal cases parallel and support the reasoning of Huerta, supra, on the same or very similar separation of powers issue. See United States v. Musser, 856 F.2d 1484, 1487 (11th Cir.1988), cert. den., ___ U.S. ___, 109 S.Ct. 1145, 103 L.Ed.2d 205 (1989); United States v. Ayarza, 874 F.2d 647, 652-653 (9th Cir.1989), cert. den., ___ U.S. ___, 110 S.Ct. 847, 107 L.Ed.2d 841 (1990); U.S. v. Francois, 889 F.2d 1341 (4th Cir.1989); and U.S. v. Severich, 676 F. Supp. 1209, 1212-1213 (S.D.Fla. 1988), aff'd, 872 F.2d 434 (11th Cir.1989).
Thus, there is substantial out-of-state and federal authority supporting the legislative empowerment of a prosecutor to trigger a court's ability to vary from mandatory sentencing requirements.
Our consideration of this issue is necessarily impacted by the recent decision of our Supreme Court in State v. Warren, 115 N.J. 433, 558 A.2d 1312 (1989), which comments extensively on the boundaries of prosecutorial power and judicial sentencing discretion where plea bargains are concerned. In Warren the defendant entered into a plea agreement with the prosecutor, pleaded guilty to various charges, and was sentenced in accordance with the agreement. The defendant asserted that the plea *459 agreement approved by the trial court illegally entitled the prosecutor to withdraw from the plea bargain if the sentence imposed by the trial court did not conform to the prosecutor's recommended sentence. The Supreme Court agreed.
In arriving at its decision, the Court first observed that generally plea agreements encompass some sentence limitation that must be observed by the court. Otherwise, either the defendant or the State can withdraw from the agreement and force the other party to go to trial. However, it determined that it was not permissible for a sentencing court to accept a plea bargain that includes a set, negotiated sentence which enables the State to withdraw from the guilty plea and requires the defendant to go to trial if the negotiated sentence is not imposed. The Court held that the parties to a plea agreement can only agree to a sentence that the prosecutor will recommend to the court and are not empowered to negotiate a sentence which is binding on the court.
In arriving at that conclusion, the Court iterated the need to protect judicial sentencing discretion and eschewed any attempt to allow prosecutorial inroads on that discretion.
The court in discharging its sentencing responsibilities may not simply accept the terms of a plea agreement. [Citations omitted.]
The determination of a criminal sentence is always and solely committed to the discretion of the trial court to be exercised within the standards prescribed by the Code of Criminal Justice. [Citation omitted.] That discretion should not by implication be encumbered by augmenting the prosecutor's influence on the sentencing determination. Such limitations on prosecutorial influence over sentencing have long been understood and accepted in defining the prosecutorial role in criminal sentencing, and we entertain no doubt that this understanding is reflected in the current Code. [Id. at 447-448, 558 A.2d 1312.]
* * * * * * * *
... [w]e cannot overstress the significance of the judicial responsibility in imposing sentence. `[P]ronouncement of judgment of sentence is among the most solemn and serious responsibilities of a trial court. * * * Our new Code reflects a delicate balance between discretion and fixed sentencing. An independent judiciary is its fulcrum.' [Citation omitted.] A court's neutrality can be threatened if a prosecutor can exert pressure to impose the recommended or negotiated sentence by threatening to withdraw if the sentence imposed is more lenient. The balance `between discretion and fixed sentencing' can readily be *460 upset if the prosecutor were allowed to impinge in this way on the court's independent discretion. Moreover, such prosecutorial influence would surely be inimical to the important goals of sentencing uniformity. [Citation omitted.] Individual prosecutors with distinctive perceptions of the gravity of particular offenses and offenders, and responsive to a very different constituency from that of the judiciary, would add undue variability, inevitable inconsistency, and greater disparity to the sentencing process. Hence, separate prosecutorial discretion cannot be superimposed on the court's sentencing discretion. [Citations omitted.] [Id. at 449, 558 A.2d 1312, emphasis added.]
We are aware that defendant did not advance any constitutional arguments before the trial court directed to N.J.S.A. 2C:35-14a and also failed to note that in his brief as required by R. 2:6-2(a)(1). Indeed, the State justifiably questions the defendant's standing to assert any challenge to N.J.S.A. 2C:35-14 in the absence of any attempt to invoke its provisions at the trial level. In re Martin, 90 N.J. 295, 308, 447 A.2d 1290 (1982). In such a case we might well refuse to consider the issue at all. Cf. State v. Ogar, 229 N.J. Super. 459, 471, 551 A.2d 1037 (App.Div. 1989). However, in light of our disposition of the identical constitutional attack regarding the provisions of N.J.S.A. 2C:35-12, we elect to pass on the issue notwithstanding such a deficiency. Pressler, Current N.J. Court Rules, Comment R. 2:6-2 (1990).
In the face of defendant's contentions, the State readily concedes that the separation of powers doctrine is applicable and should be maintained in spite of any statutory language indicating otherwise. With respect to both N.J.S.A. 2C:35-12 and N.J.S.A. 2C:35-14, however, the State acquiesces in an interpretation which would preserve to "the trial court, and not the prosecutor, the ultimate authority to determine the appropriate sentence" so as to avoid any constitutional infirmity. But, in espousing that position, the State properly points out that the "sentencing power" has never been the exclusive province of the judiciary in all aspects. For example, the Legislature may enact mandatory sentencing statutes which serve to restrict a court's sentencing decision. State v. Des Marets, 92 N.J. 62, 80, 455 A.2d 1074 (1983). The Governor has *461 the power to pardon a defendant who has been sentenced to prison. State v. Mangino, 17 N.J. Super. 587, 591, 86 A.2d 425 (App.Div. 1952). The prosecutor is empowered to decide what charges to bring against a person and thereby initially decide sentencing exposure. In re L.Q., 227 N.J. Super. 41, 545 A.2d 792 (App.Div. 1988). See United States v. Caputo, 791 F.2d 37, 37 n. 1 (3rd Cir.1986). Nevertheless, it is settled that while the prosecutor has the right to enter into a plea agreement, the sentencing court undoubtedly retains the authority to reject it, if the interests of justice are not served thereby. State v. Howard, 110 N.J. 113, 123, 539 A.2d 1203 (1988); R. 3:9-3(e).
Given the general presumption of the constitutionality of statutes, we keep in mind the principle that if the challenged statutes reasonably can be construed in a manner which would uphold their constitutional validity we are bound to do so. Right to Choose v. Byrne, 91 N.J. 287, 311, 450 A.2d 925 (1982); State v. Negron, 118 N.J. Super. 320, 323, 287 A.2d 461 (App. Div. 1972). See also 2A Sutherland Stat. Const. § 45.11 and § 45.12 (4th Ed). Further, we are guided by the mandate that
the legislature acted with existing constitutional law in mind and intended the act to function in a constitutional manner.... The further presumption is that a statute will not be declared inoperative and unenforceable unless it is plainly in contravention of a constitutional mandate or prohibition. State v. Profaci, 56 N.J. 346, 349, 266 A.2d 579 (1970).
Thus, the issue becomes whether N.J.S.A. 2C:35-12 and N.J.S.A. 2C:35-14 reasonably can be interpreted in a manner that preserves the ultimate sentencing decision to the court rather than the prosecutor. We have no hesitancy in concluding that they can. In reading both provisions, it is clear that the prosecutor must initiate the decision to afford a defendant the opportunity for a lighter sentence. However, if such a decision by the prosecutor was to remain unfettered it could lead to an unfair, discriminatory or absurd result in individual cases. In light of such possibilities, we cannot imagine that the Legislature meant to oust the courts of the right and opportunity to examine whether such a decision exceeds the permitted "prosecutorial *462 influence on the sentencing determination." State v. Warren, 115 N.J. at 448, 558 A.2d 1312. Accordingly, we are persuaded that the Legislature fully intended to reserve to the judiciary the power to approve or reject any agreement between the defendant and the State.
Consistent with such an interpretation and the State's position on this appeal, we also conclude that the court retains the power to inquire into the reasons and other details of any agreement struck or rejected between defendant and the prosecutor, both pre-conviction and post-conviction. Obviously, a court may review for the patent and gross abuse of the exercise of the prosecutor's discretion in the first instance if convinced that the interests of justice will not be served by accepting it in that particular case. Cf. State v. DeMarco, 107 N.J. 562, 569, 527 A.2d 417 (1987). Such a concept is not novel, for the courts have always reserved the right to do so, as in the case where a prosecutor improperly refuses to approve of defendant's entry into a pretrial diversionary program. See State v. Leonardis, 71 N.J. 85, 363 A.2d 321 (1976), on reh'g, 73 N.J. 360, 375 A.2d 607 and its progeny. By so interpreting those statutes the defendant's separation of powers argument fails. State v. Le Compte, supra, 406 So.2d 1300, 1307-1308 (La. 1981), reh. den., 446 So.2d 314 (La. 1984). Cf. State v. Olson, 325 N.W.2d 13, 19 (Minn. 1982).
Turning our attention to the State's cross-appeal, suffice it to say that we agree that the trial judge should not have merged the convictions for possession and possession with the intent to distribute, with the distribution convictions in the factual circumstances presented in this case. State v. Davis, 68 N.J. 69, 79-80, 342 A.2d 841 (1975). Moreover, we agree that the trial judge erred in imposing the mandatory laboratory fee on only two of the convictions, contrary to the provisions of N.J.S.A. 2C:35-20a.
Accordingly, we reverse the merger order and remand for resentencing on those offenses and direct compliance with *463 N.J.S.A. 2C:35-20a consistent with this opinion. State v. Crouch, 225 N.J. Super. 100, 541 A.2d 1092 (App.Div. 1988). In all other respects, the convictions and sentences are affirmed.
NOTES
[1] Defendant impliedly asserts that he could have qualified for such a program due to his purported "serious drug problem." However, this contention was not raised before the trial court.
[2] Navarro enjoys continued vitality in California. Rhoney v. Mun. Court of San Mateo County, 194 Cal. App.3d 292, 239 Cal. Rptr. 419, 420-422 (1987) (where the court held that a statute that effectively conditioned a court's sentence on the approval of the county sheriff was in violation of the separation of powers doctrine).